IN RE APPLICATION OF CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT, v. GORDON DRAYTON, APPELLEE.
109 N. W. 2d 369

Filed June 2, 1961. No. 34972.

*Mason, Knudsen, Dickeson & Berkheimer* and *Richard M. Duxbury,* for appellant.

No appearance for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission denying an application of the Chicago, Burlington & Quincy Railroad Company for authority to dualize the station agencies at Orchard and Brunswick, Nebraska.

The railroad company operates a railroad line from South Sioux City, Nebraska, to O'Neill, Nebraska. The stations of Orchard and Brunswick are on this line. Orchard has a population of 458 and Brunswick 260. It is 15.8 miles between the stations by highway, and 13.88 miles by rail. The agents at these stations work a 5-day week, Monday through Friday, 8 a.m. to 5 p.m. The stations are serviced by two westbound trains which arrive in Brunswick and Orchard on Mondays and Thursdays at 12:15 p.m. and 12:55 p.m., respectively. They are also served by two eastbound trains which arrive in Orchard and Brunswick on Tuesdays and Fridays at 2:01 a.m. and 2:40 a.m., respectively. A check of the work performed by the agent at Brunswick shows that it can be done in 1 hour and 35 minutes per day and the work at Orchard can be performed in 1 hour and 55

minutes per day. The evidence of the railroad is that the work of the two stations can be performed by a single agent working a half day at each station. The saving to the railroad company by using a single agent at both stations is in excess of $5,000 per year. This loss is indicated by exhibits showing income and expense which we shall not set out since it is not disputed. The evidence of the railroad's officials is that the arrangement will provide adequate service to both communities in a manner testified to by them.

An objection was made to the approval of the application by Gordon Drayton, a resident of Orchard who operates a grain elevator and engages in the sale of feed and fertilizer. Several witnesses testified in support of the objection made. The evidence of the objector and these witnesses is to the effect that a half-time station would be very inconvenient to them and other users. While there is evidence of some inconvenience to the public, there is no evidence that a half-time agent could not perform all the work of the station and supply the needs of these two communities.

"The purpose of commission control of railroads is to secure adequate, sustained service for the public at a minimum cost. The commission is not in the position of an owner. It has a duty to the railroads as well as to the public. It must protect and conserve the investments in the railroads and insure a reasonable return to railroads that are efficiently maintained and operated." Chicago & N. W. Ry. Co. v. Save the Trains Assn., 167 Neb. 61, 91 N. W. 2d 312.

Stations in this part of the state were originally established at a time when railroads provided the only available transportation. They were located to meet the needs of a farm economy. The situation has changed and competitors have drawn off substantial amounts of passenger and freight traffic from the railroads. Station agents in small communities have not been subjected to work adjustments, with the result that the time of sta-

tion agents has not been effectively utilized. It is the function of management to operate economically and it is charged with the duty of reducing costs where it can do so and still continue to perform essential services to the public. "It is the duty of a carrier to seek, and of regulatory agencies to permit, the elimination of those services and facilities that are no longer needed or used by the public to any substantial extent." Chicago, B. & Q. R. R. Co. v. Keifer, 160 Neb. 168, 69 N. W. 2d 541.

When an application is made to discontinue an existing service or facility, the need for the service or facility and not mere local convenience provides the yardstick. The relation of costs to revenue is also an important element to be considered. When the service sought to be discontinued or modified is one of convenience rather than necessity, the question of expense to the company, the volume of business done, the community need, the revenue return, and the relative benefit to the public are factors that cannot be disregarded. Chicago & N. W. Ry. Co. v. Save the Trains Assn., *supra*.

The evidence clearly shows that the combining of the agencies at Orchard and Brunswick will provide all essential services at these two points. The inconveniences testified to are not sufficient to justify an expenditure in excess of $5,000 to eliminate them. The evidence shows without substantial conflict that there is no actual public need for a full-time station agent at either point and that the public need can be adequately served by one agent in the manner outlined by the carrier. Under such circumstances the denial of an application to dualize these two station agencies is not sustained by evidence and is unreasonable and arbitrary. A reversal of the order of the railway commission is required.

REVERSED.